Our first case today, number 2012-1291, CLEAR WITH COMPUTERS v. HYUNDAI. Mr. Sherriff, Sherriff. Good morning, Your Honor. This is another in a series of cases in which a holder of a patent on 20-year-old technology, in this case a method of computerizing and customizing product brochures, alleges infringement by modern commercial websites. And indeed, this same patent has recently been asserted against a host of other companies' websites in separate litigation. This is also a case in which a plaintiff's verdict, like the proverbial emperor with no clothes, is on several key issues unsupported by the requisite substantial evidence. And I'd like to focus on three of those today, each of which independently requires judgment as a matter of law. One is the failure of proof on infringement. Second, the failure of proof providing the prior art, and also the failure of written description. Now, one indicator of CWC's failure of proof on infringement is its attempt to advance a new interpretation of the claim language that's directly contrary to the position espoused at trial by its own expert, a point that was correctly rejected by Judge Davis and is contrary to the principle applied in decisions like Cordis and Northern Telecom from this Court, that you can't persuade a jury to rule for you under one interpretation of claim scope and then defend the verdict under a different interpretation. Well, did you ever ask for an interpretation of a phrase of particular interest? No, because it was agreed among the parties what it meant. In fact, Dr. Ryan, at page 1997 of the appendix, Dr. Ryan testified, and everybody agreed, that claim element 1B, which is the particular interest requirement, requires that the customized proposal contain three things, a text segment, an image of a product, and an image of an environment, according to Dr. Ryan, all three being of particular interest to the customer. And that's the theory that everybody adopted and that the interpretation of the claim scope that was on which the case was tried. And when you closely review the evidence that CWC presented on this point, it's easy to see why they are so desperate to escape their own prior position on the scope of the claim. That evidence is best understood when you first look at the picture. They're basically challenging their defense of the verdict in their appeal brief here, right? That's right. So what happens if they hadn't filed a brief at all? Your problem is to upset the jury verdict. That's right. Why don't you just tell us why the jury verdict is not sustainable under the claim construction? Okay. And the beginning of that explanation is the image of the Hyundai landing page on page 26 of the blue brief, which shows two pictures, actually, of a Hyundai Veracruz in two different environments. It shows that those environments are of particular interest to the customers, right? No, it does not. And that's the... Wasn't there some sort of loose testimony to that effect? There was actually no testimony that either of those images is actually of particular interest to a customer. I thought it was. I thought they said that when you choose crossover, we get an idea about you. And that idea of a chosen crossover gives us an idea, like, for example, if we choose hybrid, we're going to show you an image of this car in a green environment because you chose hybrid. That's what I understood was the of particular interest. Well, it is true that those images are selected that way. Somebody back in the Hyundai back office is choosing those images. Well, we don't know that. We don't know exactly how that happens. Well, there was testimony to that effect. The claim says of particular interest to who? To the customer. There's been no definition of customer. Well, it's clear from the spec that customer means a particular customer. That's not what the claim says. That's not what the court said. Well, the whole purpose of this invention was to provide... Well, you should have. You should have asked for that claim construction. If you'd asked for that claim construction and said it has to be a specific identifiable customer, you'd have a pretty good argument, but you never asked for that. Well, it's true we didn't ask for that, but it's clear from the... To me, all the dancing around was on what does it mean to be of particular interest, and nobody ever focused on who the customer was. Well, it was clear from the way the case is tried that the customer is the particular customer who's interacting... Yeah, but the way the patent he chose to put that in front of the jury was, well, that's Hyundai is telling you this is what the customer wants. So it's a derivative. So Hyundai made a derivative choice based on what it thought customers wanted, perhaps on input. And since there was no specific definition of customer that limited to an identifiable one human being, the jury was free to say, well, that's okay. That input came based on a customer. Well, there was also no testimony or other evidence. CWC cites Dr. Ryan's testimony as though he said that this image is of particular interest to a particular customer, and when you look at his testimony, he simply does not say that. CWC has added that argument, but there's no testimony from Dr. Ryan or anyone else that those images, those environments in that image are of particular interest to any customer. Well, his testimony does say that. I mean, you're saying he doesn't say it at all, but he does say it. He does not say they are of particular interest to a customer. We're going to get three things, an image of a tangible product for sale, an image of an environment in which the product for sale is to be used, and an image in a tech segment consisting of a description of the product specifications, all of those things being of particular interest to the customer. Well, that was his interpretation of the claim scope. When he's talking about infringement and talking about the specific claim element, he does not say on the page of the CWC site, which are pages 2005 to 08, he does not anywhere say that these or any other specific environment is of particular interest to a customer. And the argument makes no sense in any event. And, you know, it's like just because somebody back at Hyundai thinks that, on average, customers interested in a particular model are more likely to be interested in a particular environment, obviously doesn't mean that a particular customer for whom the proposal is being made, after all. You're arguing the particular customer, not particular interest. You're now trying to argue the customer. But that's inherent in the idea of providing a proposal to a customer. It has to be an individual customer. Well, what's wrong with Hyundai saying, you know, we have millions of customers. We know what our customers like as they go in. In our showroom, people feed back to us. Somebody comes in, they ask for a sport utility vehicle, they're thinking about driving around in the mud. And that's collective knowledge that Hyundai has. And it's all based on consumers, on customers. That's true, but there's no evidence. Generic customers. And that's the point. But there's no evidence that any of that would... There was no claim construction on what the customer wants. What's wrong with the notion of a generic customer? Because it's inconsistent with the idea of a proposal to a customer, which is among the claim elements here. There has to be a proposal to a customer. And that necessarily implies that you're talking about a specific customer. Yeah, but my problem with your argument is that you seem to be saying that the customer has to expressly select the environment. And all the claims require is that those three things be selected in response to one input. So one input could be, this is the car I'm interested in, and then the three things are selected, and it would have to flow from the fact that they picked, say, a hybrid. So there's nothing in the claims that says you need three separate inputs with the three separate selections. Well, the agreed interpretation of the claim scope was that there had to be three separate things. And indeed, the claim construction order specifically said that those selections had to be made in three separate steps. Right, that the selections aren't made by the customers. These are server-side claims. The selections are made on the server side. Well, that's true, and that's a separate problem. There was insufficient evidence on that as well for reasons that we've explained in our brief. If I could, let me talk about obviousness. Like the 739 patent, our obviousness reference was a computer program for developing customized proposals for the sale of tangible products, specifically Buick cars. And let me first address how Buick invalidates the independence claim. Although CWC denies that Buick teaches or renders obvious three of the patent's claim elements, there are no material issues of fact as to any of the graham factors, including the differences between the claims and the prior art. And the first contested element is the single composite video or visual output of Claim 1C, which according to the claim construction order must show the product in the product environment along with a text segment. And if you look at the image of the Buick system on page 48, you can see that the Buick system easily met that requirement. You can see a single combined image that includes selected text at the top there and an image of a car, which is a park avenue, in a product environment, which here is a cobblestone street with some buildings behind it, as you can see more clearly in the upper image. Now, the main difference between the Buick system and the 739 patent concerns the requirement, also from the claim construction order, that the text, product image, and environment be selected in three separate steps, as we've discussed. Now, the Buick system indisputably performs separate selection of an image and related text, as you can see there from the screenshot on page 48. Now, let me just say this. This is your burden to prove by clearing from anything else. Correct. So it's your burden to establish all the underlying factual elements of the graham factors. That's right, and we did that. Well, you say you did it because you presented expert testimony, but yet your experts were heavily impeached for a variety of reasons. Isn't it possible that a reasonable jury could simply say that your expert testimony just wasn't credible? Not if there's no, number one, not if there's no proc examination on the point at issue, and not if there's no competing evidence from the other side on that particular point, and that's the situation we have here. Now, where is Dr. Fredrickson's cross's testimony on a motivation to make the combination? Because I couldn't find any testimony of hers, and she's your expert on this point, that would explain why one of Skiddle New York would be motivated to have a separate environmental image that could be superimposed with the car, to have these two separate images. So where is that testimony exactly? That's what I think is missing. And that motivation was never disputed below. It's your burden to establish one of Skiddle New York would have put this combination together in a way to render it obvious. Motivation combined is one element of that. It is your burden to establish this. I don't see any evidence that you have established it, so I think the jury would be free to have ruled against you on that basis alone. So I'm asking you, where is the evidence to establish that element that you had the burden of proving? Well, one piece of evidence is the patent itself, and it's not just the expert testimony. But I've never seen a case where the patent itself that you're trying to say is obvious. It's somehow the motivation to make the combination at the time the invention was invented for some other prior art reference. That seems like a very unusual position to take.  And those preprinted brochures would often have multiple pictures on a page. I mean, it's really a trivial innovation over the prior art to say. Again, PWC's infringement theory was that the reason this image from Hyundai's website infringed was because there were two pictures of products, one of which had an environment behind it. So it would be a trivial innovation over the prior art to take this image from the Buick program and just add another image to it. And again, the motivation to combine comes from the prior art printed brochures, which in any instance... I didn't get any to you. I hear you are doing that to me, but I saw no evidence that would support a jury verdict going that way. Well, the patent itself talks about prior art. There was lots of testimony from both sides' experts, Dr. Mercer and Dr. Ryan, about the prior art printed brochures. Do you have one final thought you'd like to add? Because you are into your rebuttal time, and I'd like to be able to give you some to preserve it. Thank you. We have a lot of cases. I would love to have the opportunity to address written description as well. Thank you. Good morning, Your Honors. May it please the Court. I'm Mark Fenster for Appellee, Clear with Computers. This appeal correctly turns on the appellate review principle that it is the sole province of the jury to weigh evidence and determine credibility. On each of the substantive issues of infringement, validity, and damages, the case was a typical battle of the experts, and the jury determined that CWC's experts were believable, credible, and that Hyundai's were not. Where did Dr. Ryan say that the environment picture chosen was of particular interest to a customer? You seem to argue that it would likely be of particular interest to a customer, but is that good enough? It is. What Dr. Ryan showed is that each of the three things, including the environment image, are selected in response to at least one answer, and that's what the claim requires. It requires selecting those three things automatically in response to at least one answer. Everyone admitted, both sides, experts agreed one answer is enough. Dr. Ryan then showed at 2045 of the record that in response to a customer's answer selecting a car model, the system automatically separately selects an environment image, a product image, and text, each time reintegrating them into a landing page on demand. He then provided further testimony that the system automatically selects different images in response to different answers about which car you're interested in, and he gave the examples that I think are more referenced, which are two, that when a customer's response indicates that he's interested in a SUV crossover, the system automatically selects an environmental image of a lake showing an outdoor lake environment, and where someone selects automatically a Sonata Hybrid, the system automatically selects a green verdant image that would be of interest. Is there a page size for that testimony? Yes, Your Honor. They are at 2005 to 2006, and at 2008. So, is the environmental image that is selected in the Hyundai system particular to the customer or particular to the car? Because certainly the patent defines particular to the customer, and all the examples are in terms of the customer's particular interest. The customer's going to use this F-150 for Hollywood, or the customer's going to use this Hybrid for city driving, or the customer's going to use this crossover to carry his own things. And so then the image, the environmental image, is unique to that customer's particular interest. And so I don't see this Hyundai system operating in a way that is similar. Certainly it doesn't meet with what I think is the spirit of the patent, but I guess we have to focus on the letter of the patent, which I understand. So I guess my question to you is, is it unique to the customer or unique to the vehicle? Because every single vehicle landing page for a particular car shows only one, exactly one, and no more environmental options. First of all, it is particular to the customer. Particular interest to the customer was not construed below. What do you think it means? The jury was instructed, without objection, to apply the plain meaning. Well, what do you think it means? What is the plain meaning, in particular, to the customer? Your Honor, I think that consistent with the plain meaning, the jury could have found that it means in response to a customer's answer. And my support for that is both the claim language and the specification at column 2, lines 26 to 35. At line 26, column 2, the patent states, quote, The customized proposal, therefore, contains pictures, textual descriptions, and pricing information that is all of interest to and relevant to a specific customer, since all of the pictures and text were linked together based upon the customer's answers. And so when we're reviewing the… Look at the very next sentence. Since each proposal is customized for a particular customer, each proposal will have a much more persuasive effect in selling the product. But that's the opposite of what the Hyundai system does. It is not particularized for a particular customer. It's particularized for a particular car. It's actually not correct, Your Honor. Wait. Do the vehicle landing pages for… I don't know. Pick one of the cars. I don't know the names. Pick one. Veracruz.  Does the vehicle landing page for the Veracruz ever show a different environment than the one in this picture? The landing page does not. That does not go… That does not mean that it's not customized and that it doesn't practice the spirit of the invention. Hyundai admits at page two of its reply brief that the jury had sufficient evidence to conclude that their system generates customized proposals. Why is that? Because out of the hundreds of thousands of pages that are in their website, you, Your Honor, when you go to their website, will only get the six or ten pages of interest to you based on responses to your answers, and you'll get different… But the environmental image doesn't change based on any answer I give. It's just the car. If I want to look at the Veracruz, I get that picture. It's like a brochure. Oh, you're interested in the Veracruz. Well, here you go. Please take this brochure and look at it. It just seems no different than a printed brochure, which is what the patent lays out as the prior art that it was doing better than. That's not an accurate portrayal of the evidence to the jury. The jury was shown evidence that the system creates customized proposals. It is true that the environmental image on a particular landing page, every person who indicates their response, by their response, or indicated in that car, they do get that image. Judge Davis specifically addressed this in his claim construction, page 463 of the record, where he said, in rejecting Hyundai's argument regarding selecting, he states, the claim language does not prescribe an embodiment where there is a one-to-one correspondence of a cancer and an environment image. He specifically held, in his claim construction order at 463, that having only one environmental image to choose from in response to a particular answer is within the scope of the claim. Why does it still meet the spirit of the invention? Because what Jerry Johnson set out to do and what his invention did was, he's got tons of information, tons of binders of information that he needs to take on a sales call, but you may be interested, because you're only interested in the Veracruz, on these six pictures, on these six pages out there. And that's what the Hyundai system did. So it goes back to the point that I made to your friend on the other side, and that's if you have to, if all three things can be picked based on one response, to some extent the response is predictive rather than it has to identify a particular environment. That's exactly right, Your Honor, and that is, I believe, the key to this, that the claim language only requires selecting all three things in response. There is no separate requirement for choosing the environment separately or having three inputs, one of which corresponds to the input now. Then how is this claim not ultimately, I mean this seems to me a be careful what you wish for kind of situation, going to be invalidated? Maybe not in this case, maybe they didn't do a good enough job in front of the jury, but how is this claim, if we accept your argument that just one response, i.e., I want the Veracruz, means that that person gets the exact same text as every other person who says I want the Veracruz, the exact same environmental image, and the exact same car picture, how is that any different than the old-fashioned printed publications? You walk in and say, I want a Veracruz, and they hand you the printed publication. Your Honor, this is an automatic system. It requires a very specific selection device that's connected to an active database and a static database. It has to automatically select three things in response to an answer in separate selections to integrate them into a template and to dynamically build the template on demand in response to the user's answers. That has not been shown to be in the prior art. It's certainly not in any of the prior art that's in our case. And this is a May 1992 early date. This has been a well-litigated patent. It has hundreds of references that the PTO considered in granting it. That's a question for another day, but certainly on this record, we're concerned with the facts of this case. And on this case, we look to see whether there is substantial evidence for the jury's verdict. And the jury was instructed to apply the plain meaning of a particular interest. And I commend the Court to look at Eplus v. Lawson, which was at 700 F. 3rd, 509. It was a case that I think Judge Romali sat on the panel of that was after our brief. It is this case at pages 520 to 522. And what the Court said is, to the extent that Hyundai Now is asking you to find that it's not particular interest, that it means something more, they're really making a plain construction argument. Here's the problem. To the extent that your answer to me was the reason it's not the same as a printed brochure, there's a lot of complicated moving parts here. You've got three different things that are being selected and put together instead of a single thing being presented. Or in the case of the Buick reference, you know, the background's already part of the car. It's not two separate images. But the whole point of the multiple images being put together, the text being one thing, the car picture being one thing, the environment being different, the entire point of that made clear by the patent was to individualize each of those to the particular customer because otherwise it's just ridiculously inefficient. If you're going to give everybody the exact same car on the same background with the same text, what is the innovation of having it put together by three separate things superimposed on each other as opposed to a single brochure, whether it's electronic or not? How does this differ from that Buick reference then? The only way it differs is it's not two separate images, but you're telling me the two separate images are irrelevant because the same person who wants the same car is going to get the same picture at the end of the day. So who cares if it's two things superimposed or just one thing produced? Okay. We have to deal with the substantial evidence in the record. You asked me several questions. I'll try to unpack them. Yeah, fair enough. Okay. So first with respect to infringement, does the evidence support the jury's verdict that their system infringes? Now, I respectfully disagree with your characterization that this is like the prior art. It is undisputed, Hyundai admits at page two of their reply brief, that they generate customized proposals. Now, the key to your question, Judge Moore, is that the proposal can be one or more pages. A proposal can be one or more pages. What your question assumes is that every element on that page has to be unique for that customer. But with respect, Your Honor, with respect, the jury was not given an instruction, a claim construction for a particular interest because they didn't ask for it. The jury was instructed without objection to determine what that means, to want to scale in the art and to apply the claim meaning. And Hyundai has not appealed any aspect of the claim construction. Accordingly, on appeal, you have to draw all inferences in favor of the verdict. Not on legal issues. Claim construction is a legal decision by the court. I've never seen a case that says I have to draw inferences on a conclusion of law in favor of anybody. I'm not asking, no. I think that what you have to assume is that the jury, in determining the meaning of a particular interest, was free to determine that it meant in response to an answer. And that is consistent with what the court did in E plus versus Lawson. There, under the guise of challenging the sufficiency of the evidence as to a claim term determining, the appellant there, like Hyundai here, was arguing there was no evidence to show that determining was meant because determining requires X, Y, and Z. Just like they're saying here, there was no evidence to show that it was unique. But the court there says it's improper to seek claim construction under the guise of a challenge to the sufficiency of the evidence. And the jury, having been instructed as to claim meaning, was free to determine that determined meant X and was supported by the claim meaning. Here, the jury was free to determine, consistent with the claim language and the specification, that in response to one answer is selecting something of particular interest. And therefore, it is supported by the substantial evidence, as Judge Davis found at page 65. Now, there's an alternative basis, and then I'll get to your question about viewing. There's an alternative basis. If this jury is affirmable under any set of circumstances, it should be affirmed. Now, also consistent with the claim meaning, the jury could have determined that the environment image doesn't have to be of particular interest at all. That is supported by common grammar principles that we cited in our reply brief. I don't know if they applied that or not, but they could have. And if they did, the jury verdict is certainly supportable on that theory as well. And because it's a black box, because they didn't have to... But Judge Davis said, I thought quite clearly, that the environmental image had to be particular to the customer as well. Did he not? He did. So I couldn't affirm a jury verdict if I had the belief that they disregarded his instructions on claim construction? Oh, no, no, no, Your Honor. That was not an instruction. The jury was not instructed as to that. What you're citing is his post-verdict ruling on JMAW. He did not instruct the jury as to whether or not the environmental image has to be of particular interest. There was no construction given in that in the court's charge, and the jury was therefore instructed just to apply the plain meaning. But, as your opponent pointed out, your own expert testified that the particular interest prong had to apply to all three. Did he not? He did. But as to the claim construction, the jury could have concluded that it didn't have to be. And if they didn't, that's another way to... So the judge simply said that the computer system has to select three separate things, and they have to be selected separately, but you're saying that the judge did not say that each of those selections has to be of particular interest? That's correct. That's correct. In the jury's charge, in the court's claim construction, in the jury's charge, the jury was given no instruction as to whether the environmental image has to be of particular interest. And therefore, the jury could have concluded otherwise, consistent with the plain meaning and common grammatical premise. I'm going to restore Mr. Sherr's rebuttal time that he cut into. So if you want to spend a minute on obviousness, go ahead. Your Honor, this, too, was a jury verdict. And as to the jury verdict, you have to assume that all factual inferences underlying their verdict were drawn in favor of CWC. And so, as to each of the elements, it's not... I agree with you that it's missing the motivation to combine, but it is also missing, you have to assume, because it is supported by the substantial evidence, every one of the challenged elements. And those elements for Buick were the single composite visual output at 2932 to 2933, separately selecting. Dr. Ryan testified that that was missing from the Buick element at 2933. Ms. Tompkins admitted that she didn't know how the images were stored and whether they were separately selected at 2377. Dr. Ryan testified there was no selection device and he couldn't tell whether there was a selection device because there was no source code at the 2938 to 2940. He said that there was no template in the Buick device and at the 2940. He said that Claims 8 and 18 were not met at the 2926. Ms. Tompkins admitted that there was no source code for the Buick at 2373. Drawing all inferences in favor of the verdict, I think that you have to assume that each of those elements are there because there was no combination. The only obviousness challenge here is a single reference obviousness argument. If each of those elements are gone, including the lack of evidence of motivation to provide, the jury verdict must be supported on that. Thank you, Mr. Fenster. Mr. Scherer, I'm going to give you your three minutes of rebuttal time. Thank you, Your Honor. Let me just respond to a few of Mr. Fenster's points as well as a couple of questions from the court. First of all, with respect to Mr. Ryan's testimony, Mr. Fenster just said that Mr. Ryan testified that the images selected on the Hyundai website were of particular interest to the customer. But if you look at his testimony on page 2005 to 2008 of the appendix, it's simply not there. There are two references to environment images. On 2006, he says, here you see the page. I'll mark this guy as an environment, a picture of an environment, a picture of a product in an environment at the lake. And what he was referring to was that picture of the Veracruz before. He does not say that those images, those environment images are of particular interest to customers. And then over on page 2008, he talks about a landing page for a Sonata Hybrid. And he says, you can see the car in a very green environment. Here's the product. He never says that that environment is of particular interest to the customer. So there's just no – Well, first of all, he does explain how the website works, correct? He does. Right. And then if the jury is instructed that particular interest is to be given at plain and ordinary meaning, why would you need expert testimony on that point? Well, you need to have some evidence that it's of particular interest. And there's nothing anywhere in which anybody, any of the witnesses ever says, look, here's the environment of particular interest to the customer. It's just not in the record. Now, Mr. Spencer also said that we admitted in our reply brief that the Hyundai website complies with the proposal requirement. Well, that's just not true. In our reply brief, we admitted that the proposal could be multiple pages, as Dr. Ryan testified. And then we went on to say that the only portion of the website that's accused of infringement, including the single composite visual output requirement, is the landing page itself. So we did not admit that the proposal requirement was met. And on this point of whether it's enough that somebody has made a predictive judgment that a particular environment image is going to appeal to a wide variety of customers of a particular kind, again, that's just contrary to the whole invention, which was, as Judge Moore indicated... But it's not contrary to the claim language. So it might be contrary to the spirit of the invention, but it seems completely consistent with the claim language. So, I mean, the claim favors maybe are really broad. Maybe you've got a good validity challenge. But I think everything he said about the claim language on infringement rings true. Well, with respect, Your Honor, the claim language does require a proposal to a customer. And that, to me, clearly indicates that you're talking about a particular individual customer. Yes, but it also says in the automatically select, automatically select in response to at least one of the received answers, comma, an image of the product, image of the environment, image of the text. One answer. So when you choose crossover, you are now in response to that one answer, or one of the names of the cars, I keep forgetting them. Barracuda. Barracuda. Okay. In response to Barracuda, Cruz, that's your one answer, you're going to get an image of an environment, an image of a product, an image of text. It says one answer. Well, there's no one answer. One answer can't be golf slash Barracuda slash $20,000. It could be. It could be. But that's not what is required by the claim. One answer. That's it. That's the claim language. I can't, look, I think reading the spec, it seems to me they're talking about three answers, right? They're talking about, you've got to tell me something about you. You like golf. Great, I'm going to show you this car with golf clubs sticking out the back. You want this car. But those are two answers. The claim says one answer, you get all this stuff. Well, but. Seems like that's what you do. But it would be consistent with the spec to say that one answer is, you know, that there's a menu of choices, and there was an example of a prior art system that Mr. Johnson sold, the Mercedes system, where you could provide one answer where you were simultaneously picking the product and you were picking the environment that was of interest to you. There was a range of possible environments there, and with one answer you could pick both the product and the environment. And to say that just because somebody in a back office has made a predictive judgment, that the environment image has now become an environment of particular interest to the customer, I think is contrary not only to the spirit, but to the letter of the claims, which do require a proposal. Why didn't you ask for the term particular interest to be considered? Well, because there was no dispute among the parties about how the claims were going to be understood. TWC said from the beginning that it was going to show three separate selections of those three separate elements, and so there was just no dispute about it. But it went to the jury with the instruction that they were to give the plain meaning to that term particular interest, correct? Right, because all of the testimony was consistent, all the evidence was consistent with our understanding and everyone's understanding of how the claims were to be understood. It seems to me, it may be that the principle that controls this case, ultimately on infringement, is the principle that you can't try a case to a jury under one understanding of claim scope and then try to defend it on appeal under a completely different understanding. I don't see how they did that. Their expert testified, your expert testified, that all three of these things are of particular interest to the customer, but you want to make it three separate questions, and the claim clearly says one. That's where you're disputed. They're saying of particular interest to the customer, if you want a Veracruz, you want a crossover, you like lakes. That is of particular interest to you. They've made that decision based on your selection of crossover and Veracruz, and they say that's how it is particular to you. You're not the only one who's going to like lakes. They think everybody who wants a Veracruz likes lakes, but that's how they say it is particular to the customer. Jury heard that evidence. How do we say there's no substantial evidence for their verdict? There was just no evidence that those things were of particular interest to the customer. There's no evidence to support the last step in your honors analysis. Other than the predictive notion in Hyundai's back shop, right? But nobody ever... That's coming back to your hope that the customer is a real-life individual whose name you could put on the face, as opposed to a prediction as to what the customer would want if they chose the car. And there was no claim construction on that issue. There was no claim construction, but there was also no testimony... Wouldn't be if you had to try this case again, right? Undoubtedly. You wouldn't know exactly what you would ask for. Undoubtedly, but there was no testimony from anyone that... In fact, there was no testimony from anyone that these background pictures were chosen even because of a predictive judgment about what most people would like. So there's just no evidence in the record to satisfy that step. I see I'm well beyond my rebuttal time. Thank you, Mr. Scherer. I thank both counsel for their argument. The case is taken under advisement.